UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sonya Braxton, | File No. 26-cv-1977 (ECT/LIB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| United States Department of Agriculture, | |
| Defendant. | |

---

Sonya Braxton, *pro se*.

Perry Sekus, United States Attorney's Office, Minneapolis, MN, for Defendant United States Department of Agriculture.

---

Pro se Plaintiff Sonya Braxton obtained a housing loan from the United States Department of Agriculture. After Ms. Braxton contracted a serious dental infection, she applied for a two-year loan-payment moratorium. The Agency denied Ms. Braxton's moratorium request and notified her that payment of all amounts due under the loan was accelerated. The Agency concluded that, even with a two-year moratorium, Ms. Braxton was not likely to financially recover and resume making payments on the loan. In this case, Ms. Braxton claims the Agency's denial of her moratorium request and acceleration of amounts due under the loan violated her rights under the federal Constitution and several federal statutes. The Agency seeks the case's dismissal under Federal Rule of Civil Procedure 12(b)(6), and the motion will be granted. As alleged, Ms. Braxton's claims are not plausible.

*The Basic Standards Governing the Agency's Rule 12(b)(6) Motion*

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

*The Pro Se Plaintiff "Liberal Construction" Rule*

Because she is representing herself, Ms. Braxton's Amended Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The liberal-construction rule does not excuse a pro se plaintiff from alleging sufficient facts to support

the claims she advances. *Stone*, 364 F.3d at 914. And notwithstanding the liberal-construction rule, "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see also Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012).

*Whether Facts Beyond the Complaint May Be Considered*

In adjudicating motions under Rule 12(b)(6), "courts are not strictly limited to the four corners of complaints," but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified); *see Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (explaining that consideration of matters outside the pleadings or evidence in opposition to the pleadings generally converts a Rule 12(b)(6) motion into one for summary judgment).

Here, extra-pleading materials will be considered in adjudicating the Agency's Rule 12(b)(6) motion. Ms. Braxton attached many exhibits to her Amended Complaint. *See* ECF Nos. 34-1–34-21. The Agency did the same with its motion. *See* ECF Nos. 41-1–41-9. The documents concern Ms. Braxton's loan, her moratorium application, and the Agency's acceleration of outstanding loan amounts. Both parties submitted some of the same materials concerning Ms. Braxton's moratorium application and the Agency's

decisions on the application. *Compare, e.g.*, ECF No. 34-5, *with* ECF No. 41-7. Neither party questions—and there is no reason to doubt—any specific document's authenticity. And these documents seem integral to Ms. Braxton's claims in the sense that the documents represent the very decisions and process Ms. Braxton challenges in this case.

*Ms. Braxton, Her Housing Loan, and Her Moratorium Application*

Ms. Braxton lives in rural Littlefork, Minnesota. Am. Compl. at 5. She is Native American, and she suffers from post-traumatic stress disorder and generalized anxiety disorder. *Id.* She has received Supplemental Security Income (or "SSI") since 1999. *Id.* In February 2022, Ms. Braxton received a $56,281.00 housing loan from the Department of Agriculture Rural Housing Service. ECF No. 41-1 at 1.[1]

On September 30, 2025, Ms. Braxton applied with the agency for a payment moratorium. *See* ECF No. 41-2. To support the request, Ms. Braxton explained that she faced an "extraordinary, unforeseeable medical hardship and the resulting financial distress" caused by "multiple, severe, and recurrent dental abscesses." *Id.* at 1. Ms. Braxton explained that her residence's remote location would make traveling to medical and dental appointments relatively expensive and that her $967 monthly SSI benefit was her only income. *Id.* at 1–2. Ms. Braxton represented that her SSI benefit would not be adequate to meet her medical-transportation needs and her "basic living expenses, including [the] mortgage." *Id.* at 2. To support her moratorium request, Ms. Braxton

[1] Page citations are to the pagination assigned by the court's CM/ECF system appearing in a document's upper right corner, not to a document's original pagination.

included a document showing the amount of her monthly SSI benefit at that time, an $80 taxi receipt, medical records, and more than forty pages of documents from a separate federal lawsuit Ms. Braxton had filed against the State of Minnesota, two of its agencies, and several of its officials. *See generally id.*; ECF No. 41-2.

*The Agency's Denial of Ms. Braxton's Moratorium Application*

At each of three successive review levels, the Agency denied Ms. Braxton's moratorium request. (1) On November 25, 2025, the Payment Assistance Section within the Agency's Cash Management and Borrower Assistance Branch issued the initial denial. *See* ECF No. 41-3. The explanation underlying this decision was as follows:

> Your reason provided for requesting a moratorium is not considered to be a temporary situation. According to the information you have provided, you are on a fixed income of SSI benefits which is your permanent financial situation. Also, having to pay cab fare for doctor's appointments are not considered for the purpose of a moratorium. Therefore, the situation you describe does not meet the eligibility requirements for a moratorium.

*Id.* at 1.

(2) Ms. Braxton appealed this decision, triggering a record review adjudicative process before an administrative judge. *See generally* ECF No. 41-4 (explaining appeal process); ECF No. 41-7 at 1 (explaining that Ms. Braxton requested "a record review"). The administrative judge upheld the initial denial in a decision dated February 17, 2026. *See generally* ECF No. 41-7. As a legal matter, the administrative judge concluded that payment moratorium eligibility rules required Ms. Braxton to show that she was "temporarily unable to continue to make scheduled payments," and that "temporary" in

this context meant Ms. Braxton would likely recover and bring her loan payments current within the two-year moratorium period. *Id.* at 3–4 (citing 7 C.F.R. § 3550.207 and "Agency HB 2-3550, Paragraph 5.5(C)"). As a factual matter, the administrative judge determined that Ms. Braxton had not shown her inability to make payments would be temporary in this sense. *Id.* at 5 ("The Agency did not err when it concluded that it was unrealistic, considering all the information presented by the Appellant and the Agency's judgment, to anticipate financial recovery on the part of the Appellant within the maximum two-year moratorium period."); *id.* at 6 ("The Agency did not err when it concluded that the Appellant's financial circumstances were not temporary.").

(3) Ms. Braxton exercised her right to seek review of the administrative judge's determination with the (Acting) Director of the National Appeals Division. *See* ECF No. 41-7 at 7–10 (explaining appeal process); *see also* ECF No. 41-8 (requesting review). The acting director affirmed the administrative judge's decision in a decision dated April 7, 2026. *See generally* ECF No. 41-9. The acting director explained that she "agree[d] with the Administrative Judge that it is not evident from the record that [Ms. Braxton's] condition will be sufficiently resolved within two years." *Id.* at 5.

*Ms. Braxton's Claims*

Ms. Braxton filed her original Complaint commencing this case on March 20, 2026. *See* ECF No. 1. After the Agency moved to dismiss her original Complaint, *see* ECF Nos. 22–27, Ms. Braxton filed her operative Amended Complaint, *see* ECF No. 34. In it, she asserts seven claims: (1) Ms. Braxton claims the decision to deny her moratorium application violated the Administrative Procedure Act (or "APA"), 5 U.S.C. § 706(2)(D),

because the decision was "arbitrary, capricious, an abuse of discretion, and not in accordance with the law." Am. Compl. at 12–13 (Count I). (2) Ms. Braxton claims the decision to deny her moratorium application amounted to disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794. Am. Compl. at 13–15 (Count II). (3) Ms. Braxton claims the decision to deny her moratorium application amounted to public-assistance discrimination in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(2). Am. Compl. at 15–24 (Count III). (4) Ms. Braxton claims the Agency retaliated against her for pursuing her moratorium request administratively and through her filing of this case, and that the Agency's retaliatory actions violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(3). Am. Compl. at 24–30 (Count IV). (5) Ms. Braxton claims the Agency's retaliatory actions violated its own anti-reprisal regulation, 7 C.F.R. § 15d.3(b), and therefore the APA, 5 U.S.C. § 706(2)(A), as well its separate regulation prohibiting "[i]ntimidatory or retaliatory acts," 7 C.F.R. § 15.7. Am. Compl. at 31–32 (Count V). (6) Ms. Braxton claims that the Agency did not afford her procedural due process in violation of the federal Constitution's Fifth Amendment. Am. Compl. at 32–34 (Count VI). (7) Ms. Braxton claims the Agency discriminated against her based on her race in violation of the federal Constitution and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Am. Compl. at 35–36 (Count VII).

*The APA Claim Challenging the Merits of the Agency's Decision*

The general rules governing claims under 5 U.S.C. § 706(2)(A) are straightforward. Determining whether an agency decision was "in accordance with law," 5 U.S.C. § 706(2)(A), requires a court to "evaluate whether it was authorized under" the applicable

statute and regulation, *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 191 F.4th 585, 589 (8th Cir. 2026). A court exercises its "'independent judgment in determining the meaning of statutory provisions.'" *Id.* (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)). Determining whether an agency's decision was arbitrary or capricious, 5 U.S.C. § 706(2)(A), requires a court to evaluate whether agency's decision "was reasonable and reasonably explained," *Union Pac. R.R. Co.*, 191 F.4th at 589 (quoting *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 180 (2025)). A court reviews "whether the agency's decision was 'based on consideration of the relevant factors and whether there has been a clear error of judgment.'" *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

Ms. Braxton does not plausibly allege that the Agency's decision to deny her moratorium application violated any of these rules. The governing regulation authorized a payment moratorium "for up to 2 years" conditioned on an applicant's "temporar[y]" inability "to continue making scheduled payments," among other requirements. 7 C.F.R. § 3550.207(a)(1).[2] The Agency accepted the premise that an illness or medical condition

---

[2] Congress authorized the Secretary

> under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living.

and associated treatment-related travel expenses might conceivably result in a borrower's temporary inability to make scheduled payments. ECF No. 41-7 at 4–6. But it concluded that the record evidence did not show Ms. Braxton's temporary inability to pay. *Id.* at 5; *see* ECF No. 41-9 at 4–5. The Agency found that the medical documentation Ms. Braxton included with her application did not show that she was temporarily unable to make payments on the loan because the documentation provided "no prognosis or timeline" during which she might be expected to recover. ECF No. 41-7 at 5. In other words, if Ms. Braxton's dental condition resulted in her inability to make scheduled payments, the Agency found no evidence showing this inability might be temporary. Ms. Braxton does not explain how this conclusion was unreasonable. If it mattered, I would reach the same conclusion based on these records. The medical information Ms. Braxton submitted gave no specific indication regarding how long her dental condition and its treatment might be expected to last or what additional treatment-specific expenses she might incur. *See* ECF No. 41-2 at 7–9; ECF No. 41-8 at 4–6. Separately, the Agency determined that the additional transportation expenses Ms. Braxton claimed would be necessary for her to travel to and from ongoing treatment appointments were "not substantial enough to" leave Ms. Braxton "temporarily unable to continue making scheduled payments." ECF No. 41-7 at 5. Again, Ms. Braxton does not explain how this conclusion was unreasonable, and the record Ms. Braxton submitted regarding these expenses—an $80 cab receipt for an

---

42 U.S.C. § 1475(a); *see United States v. Larson*, 76 F. App'x 742, 745 (8th Cir. 2003). Ms. Braxton does not argue—and there is no reason to think—that the regulation is at odds with the statute.

emergency room visit—does not answer whether the transportation expenses she anticipated incurring in connection with her ongoing treatment were likely to be temporary or substantial.

*The Rehabilitation Act Disability Discrimination Claim*

Ms. Braxton claims the Agency denied her moratorium application because she is disabled in violation of the Rehabilitation Act, 29 U.S.C. § 794. *See* Am. Compl. at 13–15. This type of Rehabilitation Act claim has three elements: (1) the plaintiff must be "a qualified individual with a disability"; (2) the defendant must receive federal funding; and (3) "by reason of [the plaintiff's] disability, the defendant excluded [the plaintiff] from participation in or denied [the plaintiff] the benefits of the services, programs, or activities offered by the defendant, or subjected [the plaintiff] to discrimination." *Elsharkawy v. Chisago Lakes Sch. Dist. Bd. of Educ.*, 183 F.4th 580, 589 (8th Cir. 2026).

Ms. Braxton does not plausibly allege the third element. Ms. Braxton's theory is that the Agency denied her moratorium request based on her status as an SSI recipient. Am. Compl. at 13 ("Because Supplemental Security Income (SSI) is a federal benefit strictly restricted by law to individuals who meet severe medical disability criteria, **the Agency's explicit use of SSI status as an absolute disqualifier serves as a direct legal proxy for disability discrimination.**"); *see id.* at 5 (alleging that Ms. Braxton suffers from post-traumatic stress disorder and generalized anxiety disorder and that she has received SSI since 1999). But that's not what happened.

Begin with a procedural point. Though a federal court cannot ordinarily reject the truth of a complaint's factual allegation based on extra-complaint materials, it seems settled

that a court need not accept the truth of a complaint's allegation when a document embraced by the pleadings directly contradicts that allegation. *Jackson v. Minn. Dep't of Hum. Servs.*, No. 20-cv-749 (ECT/TNL), 2021 WL 1111075, at *3 n.4 (D. Minn. Mar. 23, 2021) (recognizing that "a court does not need to accept the truth of an allegation when a document embraced by the pleadings directly contradicts that allegation" (citing *Kebasso v. BAC Home Loans Servicing, LP*, 813 F. Supp. 2d 1104, 1110 (D. Minn. 2011))); *Bitblox LLC v. Cent. Transp., LLC*, No. 3:25-CV-1196, 2026 WL 2826129, at *4 (M.D. Pa. Sept. 21, 2026) (observing that a federal court is not "required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record"); *Leon v. County of San Diego*, 115 F. Supp. 2d 1197, 1200 (S.D. Cal. 2000) ("However, the court does not have to accept as true conclusory allegations that contradict facts which may be judicially noticed or which are contradicted by documents referred to in the complaint.").

Here, documents embraced by the Amended Complaint render Ms. Braxton's central allegation—that the Agency denied her moratorium request based on her status as a disabled SSI recipient—implausible. (1) The Agency never treated Ms. Braxton's SSI-recipient status "as an absolute disqualifier" from granting her a loan payment moratorium. The Agency's initial denial noted that Ms. Braxton's status as a recipient of a "fixed income of SSI benefits" was her "permanent financial situation." ECF No. 41-3 at 1. In the context of a regulatory regime that asks whether a borrower's "repayment income fell," 7 C.F.R. § 3550.207(a)(1)(i), the Agency's consideration of the fact that the borrower is on fixed income seems entirely appropriate. Nowhere does the initial decision hint that Ms.

Braxton's SSI-recipient or disabled status as such disqualified her from a moratorium. (2) Regardless, the initial decision is not the controlling decision, *cf. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659–60 (2007), and the Agency's final decision did not rely at all on Ms. Braxton's SSI-recipient status. As explained above, the Agency's final decision was based on the absence of evidence showing a prognosis or timeline during which Ms. Braxton might be expected to recover from her dental condition, ECF No. 41-7 at 5, and that the additional transportation expenses Ms. Braxton claimed would be necessary for her to travel to and from ongoing treatment appointments were "not substantial enough to" leave Ms. Braxton "temporarily unable to continue making scheduled payments," *id.* Ms. Braxton thus does not plausibly allege that the Agency denied her moratorium request "by reason of [her] disability." *Elsharkawy*, 183 F.4th at 589.

*The Equal Credit Opportunity Act Discrimination Claim*

The Equal Credit Opportunity Act (or "ECOA") makes is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2). Dividing the statute into elements, a plaintiff alleging a claim under this ECOA subsection must allege facts plausibly showing that (1) she was a member of the protected class—*i.e.*, all or part of her income derived from public assistance; (2)

she applied for credit from the defendant;[3] and (3) she was denied credit or suffered an adverse consequence in some other credit-transaction-related respect because of her protected status. Regarding the third element, direct or circumstantial allegations of discriminatory intent will do. As Judge Menendez has explained:

> A plaintiff may establish a violation of the ECOA by presenting direct evidence of discrimination by the defendant, which may include "statements by persons involved in making the [credit] decision that directly manifests a discriminatory attitude." *Dismuke v. Connor*, No. 05-cv-1003, 2007 WL 4463567, at *4 (W.D. Ark. Dec. 14, 2007) (referring to Eighth Circuit employment-discrimination law regarding direct evidence). To prove that a defendant violated the ECOA in the absence of direct evidence, a plaintiff must show that "(1) [he] was a member of a protected class, (2) [he] applied for and was qualified for a loan with the Bank, (3) the loan was rejected despite [his] qualifications, and (4) the Bank continued to approve loans for applicants with similar qualifications." *Rowe v. Union Planters Bank of Southeast Mo.*, 289 F.3d 533, 535 (8th Cir. 2002); *see also Torgerson v. Wells Fargo Bank S. Dakota, N.S.*, No. 05-cv-1050, 2009 WL 255995, at *8 (D.S.D. Feb. 3, 2009) (explaining that the *Rowe* elements mirror the *McDonnell Douglas* burden-shifting framework developed in the employment context).

*Glover v. Wells Fargo Bank*, No. 22-cv-1459 (KMM/ECW), 2024 WL 2958424, at *4 (D. Minn. June 12, 2024); *see Favors v. Merrick Bank*, No. 21-cv-1447 (PJS/DTS), 2021 WL 2661361, at *2 (D. Minn. June 29, 2021) (recognizing that an ECOA plaintiff must allege facts plausibly showing unlawful discrimination).

---

[3] "The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

Here, for the same reasons discussed above regarding Ms. Braxton's Rehabilitation Act discrimination claim, documents embraced by the Amended Complaint make Ms. Braxton's allegation that the Agency denied her moratorium application because of her status as an SSI recipient implausible. In its initial decision, the Agency noted that Ms. Braxton's status as a recipient of a "fixed income of SSI benefits" was her "permanent financial situation," ECF No. 41-3 at 1, and that fact was relevant because the moratorium regulation required Ms. Braxton to show that her "repayment income fell," 7 C.F.R. § 3550.207(a)(1)(i). Again, nothing about the initial decision indicates that Ms. Braxton's SSI-recipient status itself motivated the Agency to deny her moratorium request. And the Agency's final decision was based on the absence of evidence showing a prognosis or timeline during which Ms. Braxton might be expected to recover from her dental condition, ECF No. 41-7 at 5, and that the additional transportation expenses Ms. Braxton claimed would be necessary for her to travel to and from ongoing treatment appointments were "not substantial enough to" leave Ms. Braxton "temporarily unable to continue making scheduled payments," *id*. Ms. Braxton alleges no facts plausibly showing that the Agency denied her request in violation of the ECOA because all or part of her income came from public assistance. 15 U.S.C. § 1691(a)(2).

*The Equal Credit Opportunity Act/APA Retaliation Claims*

Under the ECOA and the APA, Ms. Braxton claims the Agency unlawfully retaliated against her for engaging in protected activity. These claims require a brief description of additional facts. On February 10, 2026—after the administrative judge's second-level decision denying Ms. Braxton's moratorium application, but before the Acting Director of

the National Appeals Division issued the third-level decision—the Agency sent Ms. Braxton a "Notice of Acceleration" demanding full payment of her indebtedness on the loan within thirty days. ECF No. 34-7. In a letter dated April 2, 2026, however, the Agency notified Ms. Braxton that it had removed her account "from acceleration status pending the outcome" of her third-level appeal. ECF No. 41-6. After the acting director issued her decision affirming the denial of Ms. Braxton's moratorium request on April 7, 2026, ECF No. 41-9, the Agency sent Ms. Braxton a second "Notice of Acceleration" dated May 12, 2026, ECF No. 34-9; *see* Am. Compl. at 26–27. Days later, in an email dated May 20, 2026, counsel representing the Agency in this case notified Ms. Braxton that the agency would "pause all foreclosure actions until the court decides the motion to dismiss." ECF No. 34-16 at 2. Ms. Braxton claims that the May 12 Notice of Acceleration "was not a routine administrative action, but a targeted, bad-faith maneuver designed to punish [her] for pursuing judicial relief." Am. Compl. at 26. In other words, Ms. Braxton claims the Agency sent the May 12 Notice in retaliation for her filing this case.

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(3). Dividing the statute into elements, a plaintiff alleging a claim under this ECOA subsection must allege facts plausibly showing that (1) she was a member of the protected class—*i.e.*, that she in good faith exercised a right under the chapter in which this subsection appears; (2) she applied for credit from the defendant; and (3) she was denied credit or suffered an adverse consequence in some other credit-transaction-related respect because of her protected

status. *See Shah v. JPMorgan Chase Bank, N.A.*, No. 2:24-cv-08601-AH (Ex), 2025 WL 1421290, at *4 (C.D. Cal. May 8, 2025) (identifying elements of ECOA retaliation claim as "(1) [the plaintiff] engaged in a statutorily protected activity; (2) [the plaintiff] suffered an adverse credit action; and (3) a causal connection exists between the two" (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998))). Separately, a regulation forbids the agency from subjecting any person to reprisal "for opposing any practice(s) prohibited by this part, for filing a complaint, or for participating in any other manner in a proceeding under this part." 7 C.F.R. § 15d.3(b); *see* 7 C.F.R. § 15.7 (prohibiting the Agency from taking "intimidat[ing], threaten[ing], coerc[ive], or discriminat[ory]" actions against individuals exercising their rights under governing statute and regulations).

Begin (and as it turns out conclude) with causation—*i.e.*, whether the Agency sent Ms. Braxton the May 12 acceleration notice because she filed this case. Ms. Braxton does not claim to possess direct evidence of causation. She relies instead on the temporal relationship between her commencement of this case on March 20, 2026, and the foreclosure acceleration's issuance on May 12. *See* Am. Compl. at 26. The Eighth Circuit has not addressed whether a temporal relationship is sufficient to show causation in the ECOA context, but it has addressed this question under analogous anti-discrimination statutes. "Generally, something more than temporal proximity is required to establish the necessary causal connection" between the protected activity and adverse action. *Meinen v. Bi-State Dev. Agency*, 101 F.4th 947, 950 (8th Cir. 2024). "While there is no bright line establishing when [a] temporal connection is or is not sufficient to satisfy the causation requirement, an important consideration is the length of time between the protected activity

and the adverse action." *Id.* (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832–33 (8th Cir. 2002)). Where a complaint relies solely on temporal proximity to show causation, "the time between the protected activity and adverse action must be 'very close.'" *Id.* (quoting *Smith*, 302 F.3d at 833). The plausibility of inferring retaliation "vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). It seems logical to apply these rules here. Other courts have. *See, e.g.*, *Stengel v. First Nat'l Bank of Omaha*, No. 3:25-cv-05903-DGE, 2026 WL 696837, at *2 (W.D. Wash. Mar. 12, 2026) (dismissing ECOA claim alleging retaliation based on eleven-day gap between protected activity and adverse credit action); *Presidential Bank, FSB v. 1733 27th St. SE LLC*, 404 F. Supp. 3d 1, 10–11 (D.D.C. 2019) (entering summary judgment against ECOA retaliation claim because creditor had begun proceedings leading to adverse credit action before the plaintiff engaged in protected activity).

Judged against these rules, Ms. Braxton's retaliation claims fail at the pleading stage because she does not plausibly allege causation. This is so for two reasons. (1) The Agency began the acceleration and foreclosure process before Ms. Braxton filed this case when it sent the Notice of Acceleration dated February 10, 2026. ECF No. 34-7. Without more, it is not plausible that the Agency's continuation of this process occurred because Ms. Braxton filed this suit. *See Presidential Bank, FSB*, 404 F. Supp 3d at 10–11. Put another way, the Amended Complaint includes no allegations suggesting the Agency would have halted this process had Ms. Braxton not filed suit. (2) The passage of time between this case's commencement and the Notice of Acceleration is relatively substantial. Ms. Braxton

commenced this case on March 20, 2026, and the Notice of Acceleration is dated May 12, meaning the two events were separated by a little more than seven weeks. Without more, this not-quite-two-month gap does not plausibly show causation. *See Tyler*, 628 F.3d at 986. This is especially so considering the Agency began the acceleration and foreclosure process months earlier.

*The Fifth Amendment Procedural Due Process Claim*

This claim is not plausibly alleged. "As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). To support this claim, Ms. Braxton identifies two property interests, "a protected property interest in her home and a statutory entitlement to a fair, non-discriminatory review of loan-servicing options under USDA regulations." Am. Compl. at 33. She alleges the Agency's procedures were constitutionally deficient because the Agency "repeatedly accelerat[ed] her loan account prior to the lawful resolution of administrative reviews and during active judicial oversight." *Id.* Evaluated against the Amended Complaint's allegations overall, it is difficult to understand how this might conceivably show a due-process violation. Ms. Braxton does not allege that any Agency procedures governing the acceleration and foreclosure process are structurally deficient. She does not, for example, identify what additional legal procedures might have been required to make the process sufficient for the Fifth Amendment's purposes. She cites no legal authority for the proposition that a pause in the acceleration and foreclosure process

was constitutionally required during the administrative adjudication of her moratorium request or during this case. Regardless, the Agency voluntarily paused the acceleration and foreclosure process pending the resolution of both the administrative proceedings and this case.

*The Constitutional/Title VI Race Discrimination Claim*

"Title VI prohibits being 'excluded from,' 'denied the benefits of,' or 'subjected to discrimination under' a federally funded program 'on the ground of race, color, or national origin.'" *FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 622 (8th Cir. 2019) (quoting 42 U.S.C. § 2000d). "To establish the elements of a prima facie case under Title VI, a complaining party must demonstrate that his/her race, color, or national origin was the motive for the discriminatory conduct." *Thompson v. Bd. of Special Sch. Dist. No. 1*, 144 F.3d 574, 581 (8th Cir. 1998).

Ms. Braxton does not plausibly allege that her race factored at all in the Agency's decisions to deny her moratorium application or institute acceleration and foreclosure proceedings. The only basis for the claim that Ms. Braxton's race motivated these actions is a newspaper article published in the Bangor (Maine) Daily News. *See* Am. Compl. at 35–36 (citing Sawyer Loftus, Bangor Daily News, *The USDA wouldn't let her walk away from her home. Instead, it crushed her with debt*, Me. Morning Star (July 18, 2025)). According to Ms. Braxton, this article shows that "similarly situated non-Native American borrowers were permitted to remain in default for an average of nearly nine to thirteen years without the agency initiating aggressive debt acceleration." *Id.* at 36. And Ms. Braxton alleges that "[t]his extreme divergence in enforcement timelines demonstrates that

the Agency enforces its servicing rules with a harsher, zero-tolerance standard against Native American borrowers than what is applied to white borrowers nationally, establishing a strong inference of purposeful, systemic race discrimination." *Id.* The article does not support these allegations. The article concerned an Agency pattern of delayed foreclosures with respect to defaulted rural development mortgages in Maine and the deleterious consequences resulting from delayed foreclosure in this context. *See generally* Loftus, *supra*. The article did not identify the race or ethnicity of borrowers in Maine who experienced delayed foreclosures. *Id.* It did not compare the Agency's foreclosure rates or practices among races. *Id.* Because the article does not in any way support Ms. Braxton's otherwise conclusory allegation of systemic race discrimination, the allegation is implausible, and the race-discrimination claim fails.

*Dismissal With or Without Prejudice*

Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claim "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL),

2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). The better answer here is to dismiss the Amended Complaint with prejudice. Ms. Braxton has not identified any factual allegations she might add to cure the Amended Complaint's deficiencies. The Amended Complaint represented her second attempt to plead her case. And she did not request the chance to replead her claims a third time if the Agency's motion were granted.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff's Motion for Leave to File a Sur-Reply Brief [ECF No. 51] is **GRANTED**.

2. Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 37] is **GRANTED**.

3. The Amended Complaint [ECF No. 34] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 3, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court